564 A.2d 1015

**The WILKINSBURG POLICE OFFICERS ASSOCIATION, By and Through its Trustees Ad Litem, Jerry HARDER, Hank Riebold and Thomas Kocon, Petitioners,**

**v.**

**The COMMONWEALTH of Pennsylvania, Commonwealth of Pennsylvania, Department of Community Affairs and The Borough of Wilkinsburg, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1989.

Decided Sept. 8, 1989.

5. As noted above, the Commission entered only one order, in which it revoked both Cannizzaros' licenses.

48

Anthony C. Busillo, II, The Law Firm of Gary M. Lightman, Harrisburg, for petitioners.

W. Timothy Barry, Dattilo, Barry, Fasulo & Cambest, Pittsburgh, for Borough of Wilkinsburg.

Ernest R. Closser, III, Andrew H. Cline, Gregory Dunlap, Deputy Gen. Counsels, Office of General Counsel, Harrisburg, for Com. of Pa. and Dept. of Community Affairs.

Before CRUMLISH, Jr., President Judge, and DOYLE, COLINS, PALLADINO and McGINLEY, JJ.

McGINLEY, Judge.

The Wilkinsburg Police Officers Association (Association) and its trustees brought an action within this Court's original jurisdiction seeking a declaration that the Financially Distressed Municipalities Act[1] (commonly referred to as "Act 47") violates the Constitution of this Commonwealth.

1. Act of July 10, 1987, P.L. 246, 53 P.S. § 11701.101—§ 11701.501.

Generally, Act 47 establishes criteria by which to determine whether a municipality is financially distressed, and sets forth procedures for promulgating and implementing a financial plan geared toward ameliorating the municipality's financial condition. Pursuant to the provisions of Act 47, the Borough of Wilkinsburg (Borough) was determined to be a distressed municipality. Subsequent to that determination a fiscal recovery plan was developed, which plan the Borough Council adopted via passage of an ordinance. The Association commenced this action against the Borough, the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania, Department of Community Affairs (Department) (collectively, Commonwealth Respondents), alleging that Act 47 is unconstitutional. The Borough and the Commonwealth Respondents filed preliminary objections.

A brief synopsis of Act 47 is germane to this discussion. The act provides that within 30 days following a determination that a municipality is in financial distress,[2] the Secretary of Community Affairs shall appoint a coordinator to prepare a plan addressing the municipality's financial problems.[3] The plan may incorporate numerous factors, including, *inter alia*, projections of revenue, elimination of deficits, and avoidance of future fiscal emergencies.[4] The act includes a time frame within which a municipality must enact an ordinance either approving the implementation of the plan, or rejecting the plan.[5] If the governing body of the municipality enacts an ordinance approving the plan, but the chief executive officer of the municipality refuses to implement the plan, or if the governing body of the municipality refuses to enact an ordinance approving the plan, the statute requires the chief executive officer of the municipality to develop an alternate plan.[6] Sections 248, 251 and 264

2. Section 203 of Act 47, 53 P.S. § 11701.203.
3. Section 221 of Act 47, 53 P.S. § 11701.221.
4. Section 241 of Act 47, 53 P.S. § 11701.241.
5. Section 245 of Act 47, 53 P.S. § 11701.245.
6. Section 246 of Act 47, 53 P.S. § 11701.246.

of Act 47 [7] provide that if the municipality fails to adopt a plan or fails to implement an adopted plan, all state funding will be withheld,[8] and Act 47 allows only three narrowly-drawn exceptions, in which funding will be permitted.[9] Of particular relevance to the matter at hand is Section 252 of Act 47, which provides that: "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." [10]

A brief synopsis of the Association's petition for review in the nature of an action for declaratory judgment is also useful at this juncture. In Count I of its complaint, the Association contends that the manner in which the Borough has implemented its financial recovery plan violates many of the provisions of the collective bargaining agreement which exists between the Association and the Borough. The Association requests that this Court: a) declare that the recovery plan represents an unconstitutional violation and/or impairment of the Association's contractual rights; b) direct the plan to be set aside or modified to the extent that it abridges the Association's contractual rights; c) award damages to officers who have been harmed by implementation of the plan; d) award costs; and e) order any other appropriate relief.

In Count II, the Association alleges that through the threatened loss of state funding to municipalities which do

7. 53 P.S. § 11701.248, 53 P.S. § 11701.251, and 53 P.S. § 11701.264, respectively.

8. Section 248 provides that if a financially distressed municipality fails to adopt a plan, or fails to implement an adopted plan, Sections 251 and 264 become applicable, resulting in a loss of state funding. Section 251(a) of Act 47, 53 P.S. § 11701.251(a) states that if a plan is not adopted, or, if an adopted plan is not implemented, "the municipality shall not receive a grant, loan, entitlement or payment from the Commonwealth or any of its agencies."

9. The only funds which a financially distressed municipality which has not adopted and implemented a financial plan may receive are: "1) capital projects under contract in progress; 2) moneys [sic] received subsequent to the declaration of a disaster resulting from a catastrophe; and 3) pension fund disbursements." Section 251(b) of Act 47, 53 P.S. § 11701.251(b).

10. 53 P.S. § 11701.252.

not adopt plans, Sections 248, 251 and 264 of Act 47 coerce municipalities into adopting plans. The Association contends that for all practical purposes the municipality has no choice but to adopt a plan. The Association further contends that because approval of any plan must be obtained from the Secretary of Community Affairs, the General Assembly has thus delegated municipal budgetary functions to the Coordinator and to the Secretary, in violation of Article III, Section 31 of the Pennsylvania Constitution. The Association requests that this Court declare Sections 248, 251 and 264 of Act 47 to be unconstitutional.

In Count III, the Association makes a related argument. It contends that Section 252 of Act 47 restricts a municipality's power to enter into collective bargaining agreements. The Association further argues that, by giving or denying approval of plans, the Secretary of Community Affairs retains the power over a municipality's collective bargaining agreements. The Association contends that the delegation of this municipal function to the Secretary constitutes a violation of Article III, Section 31 of the Pennsylvania Constitution. The Association requests that this Court declare Section 252 of Act 47 to be unconstitutional.

In Count IV, the Association contends that Section 252 of Act 47 is a bar to prospective bargaining agreements or arbitration awards, and that to whatever extent Section 252 of Act 47 is a bar to prospective bargaining agreements or arbitration awards, it violates Article III, Section 31 of the Pennsylvania Constitution.[11] The Association requests that

11. Article III, Section 31 provides in relevant part that:

Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the

this court declare Section 252 of Act 47 to be unconstitutional.

In Count V, the Association contends that to the extent that Section 252 of Act 47 purports to negate or void any bargaining agreement executed after the adoption of Act 47, it constitutes a "special law regulating labor" in violation of Article III, Section 32(7).[12] The Association requests that this Court declare Section 252 to be unconstitutional for this reason also.

The Commonwealth Respondents filed several preliminary objections: 1) a preliminary objection in the nature of a demurrer as to all counts (contending that the action is barred by sovereign immunity as to the Commonwealth Respondents); 2) a preliminary objection in the nature of a petition raising a question of jurisdiction as to Count I (contending that this Court has no jurisdiction over this matter because the grievance procedure which is set forth in the collective bargaining agreement between the Association and the Borough is the exclusive remedy); 3) a preliminary objection in the nature of a demurrer as to Count I; 4) a preliminary objection in the nature of a demurrer as to Count II (contending that Count II fails to state a cause of action because Act 47 does not unconstitutionally delegate power over municipal affairs); 5) a preliminary objection in the nature of a demurrer as to Count III (contending that Count III fails to state a cause of action because Act 47 does not unconstitutionally delegate power over municipal affairs); 6) a preliminary objection in the nature of a demurrer as to Count IV (contending that Count IV fails to state a cause of action because Section 252 of Act 47 does not violate Article III, Section 31 of the Pennsylvania Constitution); and 7) a preliminary objection in the nature of a

Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

12. Article III, Section 32(7) provides that: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law: ... [r]egulating labor, trade, mining or manufacturing."

demurrer as to Count V (contending that Count V fails to state a cause of action because Section 252 of Act 47 does not violate Article III, Section 32 of the Pennsylvania Constitution).

The Borough filed four preliminary objections: 1) a preliminary objection in the nature of a petition raising a question of subject matter jurisdiction; 2) a preliminary objection in the nature of a demurrer—Count II and Count III; a preliminary objection in the nature of a demurrer—Count IV; and a preliminary objection in the nature of a demurrer—Count V.

We address the Commonwealth Respondents' preliminary objections first. In their first preliminary objection they claim that as to them this action is barred by sovereign immunity. Article I, Section 11 of the Pennsylvania Constitution permits suits against the Commonwealth only to the extent that the Legislature has specifically waived immunity. The Commonwealth Respondents state that the Legislature has neither waived immunity with respect to actions brought seeking declaratory judgments, nor waived immunity with respect to actions which seek to compel affirmative action or to obtain monetary damages. They request that this action be dismissed.

The Association concedes that to the extent that Count I requests monetary relief, such relief may be directed solely against the Borough, but the Association contends that immunity does not bar any of the other requested relief in Count I or at Counts II through V.

We have stated that:

The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel *affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which

simply seek *to restrain state officials* from performing affirmative acts are not within the rule of immunity. *Concerned Taxpayers of Allegheny County v. Commonwealth,* 33 Pa.Commonwealth Ct. 518, 522–23, 382 A.2d 490, 493 (1978) (emphasis in original).

▮▮▮  Applying this rule to the matter at hand, it is clear that insofar as the Association in Count I requests that this Court award damages and costs, such action may not be maintained against the Commonwealth Respondents.  Sovereign immunity poses no bar to the Association's request in Count I that this Court modify or set aside the Borough's financial recovery plan as an unconstitutional infringement of the Association's existing contractual rights.  Nevertheless, Count I fails to state a cause of action as against the Commonwealth Respondents because they are not parties to the collective bargaining agreement and they have no role to play *vis a vis* a dispute over the terms and conditions of the agreement.  Thus we sustain the Commonwealth Respondents' demurrer as to Count I.[13]

▮▮▮  Sovereign immunity poses no bar to the Association's request in Counts II through V that Act 47 be declared unconstitutional.  We overrule the preliminary objection as to Counts II through V insofar as the Association seeks a declaration that Act 47 is unconstitutional.

▮▮▮  In Count II, the Association contends that cessation of funds to a distressed municipality which does not adopt a plan amounts to coercion.  Furthermore, because any plan must be approved by the Coordinator, the Association contends that the Coordinator ultimately determines the contents of the plan.  The Association concludes, therefore, that this constitutes an unconstitutional delegation of fiscal

13.  The Commonwealth Respondents also contend that this Court does not have subject matter jurisdiction to hear Count I, alleging that the grievance procedure is the Association's exclusive remedy.  In view of our determination above that Count I fails to state a cause of action as to the Commonwealth Respondents, we do not address this issue.

authority to the Coordinator.[14]

The Commonwealth Respondents demurrer to Count II, contending that Act 47 does not delegate to any special commission, private corporation or association any control over the fiscal affairs of municipalities and thus does not violate Article III, § 31 of the Pennsylvania Constitution. In support of this contention, they state that the appointment of a state-appointed coordinator does not constitute the creation of a "special commission, private corporation or association."

More to the point, they also dispute the Association's suggestion that the Coordinator determines the contents of a plan. The Commonwealth Respondents contend that the governing body of a distressed municipality retains ultimate control over its fiscal policies because the governing body retains the power to adopt any plan which the coordinator recommends, to reject the plan and adopt its own plan, or to choose not to adopt any plan whatsoever. Although the Commonwealth Respondents agree that Sections 248, 251 and 264 of Act 47 were designed to act as an incentive to a distressed municipality to adopt a plan through the cessation of state funding, they contend that the threat of a cessation of funding does not remove the governing body's discretion, and thus does not constitute a delegation of its authority over fiscal affairs.

We agree that Act 47 does not constitute a delegation of fiscal authority under Article III, Section 31. Article III, Section 31 was intended to "forbid separation of the power to incur debts from the power to tax...." *Schofield v. Donato*, 429 Pa. 435, 439, 240 A.2d 541, 542–43 (1968). "[N]either the Legislature nor a local elected municipal body can delegate to any appointive body the unlimited

---

14. Phrased as such, the Association's petition misstates the wording of Act 47. The Association mistakenly implies that state funds are withheld if a municipality fails to adopt a plan which the coordinator develops. Instead, state funds are withheld only if the municipality fails to adopt *any* plan. So long as the plan which the municipality adopts is approved by the Secretary for Community Affairs, the plan need not have been developed in first instance by the coordinator.

power to levy taxes. However, the right to act as agent and to perform the necessary administrative details is delegable." *Evans v. West Norriton Twp. Municipal Authority*, 370 Pa. 150, 160, 87 A.2d 474, 479 (1952). Act 47 does not separate the power to incur debts from the power to tax. Indeed, the focus of the act is to eliminate debts, not to incur them. Most importantly, the governing body of the municipality retains the decision-making authority. The Association's petition does not state a cause of action for a violation of Article III, Section 31, and we sustain the demurrer to Count II.

The Association sets forth a related averment at Count III, contending that Act 47 requires the municipality to delegate its power to engage in collective bargaining, and that the delegation of this power is a violation of Article III, Section 31. The Commonwealth Respondents demurrer to this count. For the same reasons as set forth above in the discussion concerning Count II, we sustain the demurrer to Count III.

█ In Count IV, the Association contends that Section 252 limits prospective bargaining agreements, and that this limitation violates what the Association claims is a mandate in Article III, Section 31 of the Pennsylvania Constitution that municipalities engage in collective bargaining. Article III, Section 31 of the Pennsylvania Constitution states that:

Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly *may* enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Common-

wealth with respect to matters which require legislative action, to take the action necessary to carry out such findings.

Article III, Section 31 (emphasis added).

The Association contends that because the General Assembly enacted Act 111 pursuant to this constitutional provision, Act 111 *compels* mandatory collective bargaining between policemen and a municipality. The Association further contends that Section 252 of Act 47, by forbidding a collective bargaining agreement from "violat[ing], expand[ing] or diminish[ing] the provision of a fiscal plan," sets limits on collective bargaining. The Association states that this limitation on collective bargaining violates the Act 111 right to collective bargaining, thereby constituting a violation of Article III, Section 32 of the Pennsylvania Constitution.

The Commonwealth Respondents concede that Section 252 of Act 47 places limitations on collective bargaining. They contend, however, that Section 252 constitutes, in effect, an *amendment* of Act 111. They further contend that the Pennsylvania Constitution does not *require* the General Assembly to enact a law such as Act 111; they claim, instead, that the Constitution *permits* the General Assembly to enact such a law. They conclude, therefore, that the Constitution authorizes the General Assembly to enact a law, such as Act 47, which amends Act 111. The Commonwealth Respondents thus conclude that Act 47 does not violate Article III, Section 32, and that Count IV of the Association's Petition for Review fails to state a cause of action. The General Assembly has chosen to limit police officers' statutory rights to collective bargaining. It is constitutionally authorized to do so. We therefore sustain the Commonwealth Respondents' demurrer to Count IV.

■ In Count V, the Association contends that to the extent that Section 252 of Act 47 purports to negate or void any bargaining agreement executed after the adoption of Act 47, it constitutes a "special law regulating labor" in violation of Article III, Section 32(7) of the Pennsylvania

Constitution.  The Association requests that this Court declare Section 252 to be unconstitutional.  The Commonwealth Respondents contend that Count V fails to state a claim upon which relief may be granted because Act 47 is a general, and not a special, law.

We first note that Section 252 of Act 47 in no way affects the application or interpretation of a collective bargaining agreement which is executed *prior to* the adoption of a fiscal recovery plan.  It is clear, therefore, that the Association has drafted Count V too broadly.  We will address Count V to the extent that it attacks Section 252 of Act 47 as negating or voiding any bargaining agreement executed *after* the adoption of a fiscal recovery plan.

The Association contends that Section 252 constitutes a special law regulating labor, claiming that it is based upon artificial or irrelevant distinctions, and that it permits a municipality to do indirectly that which a municipality may not do directly; *i.e.,* unilaterally determine the limits of collective bargaining.  The Association further contends that the process to be followed in making a determination of financial distress is open to abuse [15] in that a municipality, for example, by purposely failing to forward withheld income taxes, may arrange to have itself classified as distressed, and then adopt a plan which limits employee benefits and salary.

A review of relevant case law indicates that Act 47 is not a special law.  It is well established that:

[t]he general rule for determining whether an act is a special law violating the Pennsylvania Constitution is this: legislation for a class distinguished from a general subject is not special, but general; and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones,

15.  The Association suggests, by way of example, that a municipality, by purposely failing to forward withheld income taxes, may arrange to have itself classified as distressed.  The municipality may then adopt a plan which limits employee benefits and salary, a result which a municipality otherwise would be unable to obtain.

used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the Courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification.

*Freezer Storage, Inc. v. Armstrong Cork Company*, 476 Pa. 270, 275, 382 A.2d 715, 718 (1978).

Our Supreme Court recently reaffirmed the *Freezer Storage* test in *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988), and equated it with the "rational relationship test" which is used for review in cases involving the equal protection clause, stating:

A taxing statute is subject to the same 'rational relationship test' under the special laws provisions of the Pennsylvania Constitution, Art. 3, § 32, as under the equal protection clause. Legislation for a class is not an impermissible special law where the legislative classification 'is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones.' *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 275, 382 A.2d 715, 718 (1978) (quoting *Du Four v. Maize*, 358 Pa. 309, 313, 56 A.2d 675, 677 (1948)). *See also, Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 14, 331 A.2d 198, 204 (1975) (special laws provision 'requires only that a classification must have some rational relationship to a proper state purpose').

Applying these principles to Section 252 of Act 47 it is evident that Section 252 of Act 47 does not constitute a special law. The legislative distinction between a financially stable municipality and a financially distressed municipality is based on statutorily defined criteria [16] which have a rational relationship to the legislative intent to "[e]nsure fiscal integrity of municipalities while leaving principal responsibility for conducting the governmental affairs of a municipality ... to the charge of its elected officials, ..." [17]

16. *See* Section 201 of Act 47, 53 P.S. § 11701.201.
17. Section 102 of Act 47, 53 P.S. § 11701.102.

Having determined that Section 252 of Act 47 does not constitute a special law, we find that Count V fails to state a cause of action. Consequently, we sustain the demurrer to Count V.

To summarize:

We sustain the Commonwealth Respondents' preliminary objection to Count I insofar as the Association seeks damages and costs from the Commonwealth Respondents. We also sustain the Commonwealth Respondents' demurrer to Count I because the Commonwealth Respondents were not parties to the collective bargaining agreement. We sustain the Commonwealth Respondents' demurrers to the remaining Counts because Act 47 does not violate the constitution. We therefore strike Count I as to the Commonwealth Respondents and Counts II through V as to all Respondents.

Having sustained the Commonwealth Respondents' demurrers to Counts I through V, we do not have subject matter jurisdiction over the remaining Count I against the Borough and this matter is hereby transferred to the Court of Common Pleas of Allegheny County.

## ORDER

AND NOW, this 8th day of September, 1989, we sustain the Commonwealth Respondents' preliminary objection to Count I insofar as the Association seeks damages and costs from the Commonwealth Respondents and we sustain the Commonwealth Respondents' demurrer to Count I. We sustain the Commonwealth Respondents' demurrers to Counts II through V. We strike Count I as to the Commonwealth Respondents and Counts II through V as to all Respondents. Lacking subject matter jurisdiction, we direct that the remaining controversy be transferred to the Court of Common Pleas of Allegheny County.

BARRY, J., did not participate in the decision in this case.