**Diane STACKHOUSE, Appellant**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE POLICE, Paul J. Evanko and Thomas K. Coury.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2005.
Decided Feb. 8, 2006.

Richardson Todd Eagen, Harrisburg, for appellant.

Joanna N. Reynolds, Asst. Counsel, Harrisburg, for appellee.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Diane Stackhouse appeals from the order of the Dauphin County Court of Common Pleas, sustaining the preliminary objections of the Pennsylvania State Police on the basis of sovereign immunity and dismissing Stackhouse's three-Count complaint in its entirety. For the reasons stated below, we reverse and remand with regard to that portion of Count I which seeks prohibitory injunctive relief, but af-

firm the dismissal of the balance of Stackhouse's complaint.

On January 16, 2001, Stackhouse filed a three-count complaint against the State Police, State Police Commissioner Paul J. Evanko, in both his official and individual capacity, and Deputy Commissioner Lieutenant Colonel Thomas K. Coury, in his official capacity (collectively, Defendants). In her complaint, Stackhouse alleges that during an internal affairs investigation, certain State Police investigators conducted an improper inquiry into her personal affairs. Our Supreme Court has described the action as follows:

> [Stackhouse's] action stemmed from an internal investigation undertaken by the State Police in connection with [Stackhouse's] application for a job promotion. [Stackhouse] maintained in her complaint that certain State Police employees involved in conducting the investigation were permitted to delve improperly into her personal affairs, including her private, inter-personal relationships. While [Stackhouse] did not contend that Commissioner Evanko or Deputy Commissioner Coury personally inquired into such private matters or instructed others to do so, she asserted that those officials failed to ensure that the individuals conducting the investigation were properly trained to inquire only into areas which were appropriate and relevant to the subject of the investigation. She also alleged that, even after she made Commissioner Evanko aware of the nature of the ongoing investigative activities, he failed to take any corrective action.

*Stackhouse v. Pa. State Police,* 574 Pa. 558, 560, 832 A.2d 1004, 1006 (2003) (*Stackhouse I*) (previous decision in the present case resolving threshold jurisdictional issue). In Count I of her complaint, Stackhouse seeks declaratory and injunctive relief against the Defendants. Specifically, Stackhouse requests the court: (1) declare that her privacy and reputational interests under Article I, Section 1 of the Pennsylvania Constitution were violated by an internal affairs investigation; (2) prevent the Defendants from using any of the information gathered as a result of the investigation for any purpose; (3) declare that the State Police's internal affairs investigation system violates Article I, Section 1 of the Pennsylvania Constitution because of a lack of training, guidelines, policy, restrictions and procedures; and (4) prevent the Defendants from subjecting her to further investigation until the State Police develop and institute such training, guidelines, policy, restrictions and procedures. In Counts II and III of her complaint, Stackhouse seeks monetary damages from Commissioner Evanko, individually, for failing to take corrective action to protect her reputational and privacy interests.

Defendants filed preliminary objections to Stackhouse's complaint, one of which alleged that the Commonwealth Court had exclusive jurisdiction of the matter under Section 761 of the Judicial Code, 42 Pa. C.S. § 761. Common pleas held that exclusive jurisdiction lay with our court and transferred the action. Our court dismissed the case because of a lack of original jurisdiction, noting that the complaint was essentially a tort action, and would be properly commenced in common pleas. Stackhouse appealed to our Supreme Court, which held in *Stackhouse I* that the case was properly commenced in the court of common pleas. Specifically, the Court stated:

> Here, [Stackhouse] does not seek to preclude enforcement of an allegedly invalid administrative regulation, or a judicial declaration concerning its validity. Rather, her request for judicial redress stems from a series of events specific to

a single departmental inquiry, and is explicitly predicated upon the lack of any regulatory or other legal foundation for such actions. Thus, while couched in constitutional terms, [Stackhouse's] cause of action as stated in Count I rests upon the same allegations of defamation and invasion of privacy as asserted in Counts II and III. The sum and substance of [Stackhouse's] complaint, then, is that her privacy and reputational interests were invaded when state police officials unlawfully delved into her intimate inter-personal relationships during an internal affairs investigation, and that she is entitled to compensation accordingly. In these circumstances, we do not believe the inclusion of a Count for declaratory or injunctive relief premised upon the same events can properly be understood to transform the complaint from one sounding in trespass into the type of matter contemplated by *Fawber* [1], or by the Legislature, as belonging within the Commonwealth Court's original jurisdiction.

*Stackhouse I*, 574 Pa. at 564, 832 A.2d at 1008 (footnote added and footnote omitted). Accordingly, our Supreme Court remanded the case to common pleas.

On remand, common pleas held that all three Counts were barred by sovereign immunity. Common pleas reasoned that Count I was barred because Stackhouse's suit was essentially a tort action, even though it was couched in equitable terms, and cited *Stackhouse I* in support. With regard to Counts II and III, common pleas reasoned that both Counts were barred because Evanko was a high public official who was acting within the scope of his employment, making him immune from suit. Accordingly, common pleas dismissed all three Counts of Stackhouse's complaint.

■ Stackhouse appeals to our court arguing common pleas erred when it characterized Count I as sounding in tort, rather than in equity. Stackhouse further argues that common pleas erred in dismissing Counts II and III because her complaint can be interpreted to aver that Evanko was acting outside the scope of his employment. In response, the Defendants contend that all three Counts were properly dismissed because Count I is tortious and not equitable in nature and Counts II and III were made against Evanko, a high public official acting within the scope of his employment.[2]

■ Generally, the Commonwealth and its agencies, officials and employees acting within the scope of their duties are immune from suits for damages. *See* 1 Pa.C.S. § 2310 (establishing immunity for officials and employees of the Commonwealth under Article I, Section 11 of the Pennsylvania Constitution).[3] *See also* Sec-

1. *Fawber v. Cohen*, 516 Pa. 352, 532 A.2d 429 (1987) (holding that this court, rather than common pleas, had jurisdiction over an action seeking to have an administrative regulation declared unconstitutional).

2. In reviewing preliminary objections, all well-pled facts, but not conclusions of law, of the non-moving party are accepted as true. *Faust v. Dep't of Revenue*, 140 Pa.Cmwlth. 389, 592 A.2d 835, 838 (1991). Further, since the question is whether, accepting those facts, the non-moving party is nonetheless entitled to prevail as a matter of law, our review is plenary.

3. 1 Pa.C.S. § 2310 provides, in pertinent part: Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

tion 8521 of the Judicial Code, 42 Pa.C.S. § 8521.[4] Damage suits will be barred unless the plaintiff establishes that the cause of action falls under one of the specifically enumerated legislative exceptions to immunity.[5] *Dean v. Dep't of Transp.*, 561 Pa. 503, 508, 751 A.2d 1130, 1132 (2000). The exceptions to sovereign immunity are strictly construed "[b]ecause of the clear intent to insulate [the] government from exposure to tort liability." *Id.*

■ Sovereign immunity, however, will not bar certain suits in equity. Our Supreme Court has said:

The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Common-wealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel *affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to restrain state officials* from performing affirmative acts are not with the rule of immunity.

*Fawber v. Cohen*, 516 Pa. 352, 360, 532 A.2d 429, 433–34 (1987) [quoting *Philadelphia Life Ins. Co. v. Commonwealth*, 410 Pa. 571, 576, 190 A.2d 111, 114 (1963)] (emphasis in original). *See also Wilkins-burg Police Officers Ass'n v. Dep't of Cmty. Affairs*, 129 Pa.Cmwlth. 47, 564 A.2d 1015, 1018 (1989).[6] The question

4. Both common pleas and the Defendants relied on the common law doctrine of "high official immunity" to conclude that Counts II and III are barred. Because neither of these Counts allege that Commissioner Evanko made any statements—defamatory or otherwise—concerning Stackhouse, this doctrine, which affords a privilege for high public officials to speak freely within their official capacities, does not apply. Although the distinction between this limited privilege and the more general sovereign and governmental immunities had, at times, been blurred, it was clarified in *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996). There, our Supreme Court explained high official immunity, stating:

the doctrine of absolute privilege for high public officials,

as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.
. . . .
[It is] designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.

544 Pa. 487, 490–1, 677 A.2d 1194, 1195 (1996) (citations omitted) [quoting *Matson v. Margiotti*, 371 Pa. 188, 194, 88 A.2d 892, 895 (1952) and *Montgomery v. City of Philadelphia*, 392 Pa. 178, 183, 140 A.2d 100, 103 (1958)]. As the analysis in *Lindner* makes clear, the doctrine is of primary practical importance to local officials who, unlike Commonwealth officers, are not cloaked with statutory immunity for acts of willful misconduct. *Id.* at 491–92, 677 A.2d at 1196.

5. There are nine statutory exceptions where the General Assembly has waived the Commonwealth's sovereign immunity. These exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous road conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522. Neither party argues that these statutory exceptions are applicable to the present case.

6. Not at issue in this case is the additional principle that immunity will not bar a mandamus action to compel an agency or officer to

then becomes whether Stackhouse has pled one or more causes of action that fall outside of the rule of immunity.

We begin our analysis with Counts II and III of Stackhouse's complaint, which seek money damages from Commissioner Evanko. It is not disputed that Evanko is a Commonwealth party shielded by sovereign immunity for actions taken within the scope of his official duties, nor is there any allegation that the conduct charged does not fall within any of the statutory exceptions to immunity. While these Counts contain conclusory allegations that Evanko acted outside the scope of his employment, the factual averments of the complaint belie this assertion. Stackhouse avers that Evanko was aware of the improper conduct of the internal affairs investigation over which he had ultimate authority and refused to take corrective action. Although claiming that Evanko's motivation was personal, there is no allegation of any improper conduct by Evanko, only a failure to properly supervise an internal departmental investigation. There simply are no averments giving rise to a cause of action against Evanko in his individual capacity, but only a failure to exercise an official duty as police commissioner. In her brief to this court, Stackhouse argues that it was error to decide this issue at the preliminary objection stage[7] because factual development will illuminate whether Evanko acted within or outside his employment. What this argument fails to comprehend is that she cannot prevail in either case because if Evanko was acting within the scope of his employment, he is shielded by immunity, but in his capacity as an individual he had no duty regarding the investigation.

In *Kovach v. Toensmeier Adjustment Service, Inc.*, 14 Pa.Cmwlth. 214, 321 A.2d 422 (1974), the plaintiff sued two Commonwealth attorneys for their failure to direct an insurance company to disclose the name of a Jeep driver from whom plaintiff intended to seek damages. In sustaining preliminary objections on the basis of sovereign immunity, our court stated:

> We have painfully read plaintiff's complaint, and we are convinced that it contains no allegations of actions by the defendants in their individual capacities which would constitute a valid cause of action. This Court is at a loss to understand what legal *duty* defendants as private individuals had to inform plaintiff of the identity of the jeep driver. Although plaintiff inartfully refers to defendants as private individuals, it is patently clear, from the pleadings, that the actions or omissions of defendants were undertaken by them in the course of their duties as public officials representing the Commonwealth in the litigation arising from the accident. As of this writing, they are still immune from civil liability.

*Id.* at 423 (emphasis in original). Similarly, any duty on the part of Evanko to supervise the investigation of Stackhouse was a duty within the scope of his employment and he is absolutely immune from liability. Accordingly, the trial court properly sustained preliminary objections to Counts II and III.

perform a ministerial or mandatory statutory duty. *Borough of Jefferson v. Century III Assoc.*, 60 Pa.Cmwlth. 94, 430 A.2d 1040, 1043 n.2 (1981), *vacated on other grounds*, 498 Pa. 57, 444 A.2d 665 (1982). *See also Pa. Human Relations Comm'n. v. Sch. Dist. of Phila.*, 681 A.2d 1366, 1381 (Pa.Cmwlth.1996).

7. Sovereign immunity is an affirmative defense which ordinarily should be raised as new matter, but may be raised in preliminary objections when to delay a ruling thereon would serve no purpose. *Faust v. Dep't of Revenue*, 140 Pa.Cmwlth. 389, 592 A.2d 835, 838 n.3 (1991).

However, with respect to Count I, we believe common pleas erred in dismissing Stackhouse's declaratory and injunctive claims in their entirety. In doing so, the trial court relied on an expansive reading of *Stackhouse I* to conclude that Count I amounted in substance to a trespass claim and, thus, was subject to the defense of immunity. However, the court in *Stackhouse I* (which was dealing only with tribunal jurisdiction) did not say that Count I itself sounded in trespass, but only that "we do not believe the inclusion of a count for declaratory or injunctive relief premised upon the same events [as those underlying the damage claims] can properly be understood to *transform the complaint* from one sounding in trespass into the type of matter contemplated by *Fawber,* or by the Legislature, as belonging within the Commonwealth Court's original jurisdiction." *Stackhouse I,* 574 Pa. at 564, 832 A.2d at 1008 (emphasis added).

Plainly motivated by the practical difficulties posed by allocating jurisdiction over various Counts of a single complaint to different venues, our Supreme Court looked to the primary focus or "core" of the complaint to determine the one forum intended by the General Assembly to handle the case. Examining the complaint as a whole, it found that core to be an action for private redress of damage suffered by the plaintiff from past misconduct of the defendants. Even the request for injunctive and declaratory relief sought mitigation of damage to those same private interests arising from the same allegations of past misconduct. The Court contrasted the nature of this suit to that in *Fawber,* which sought a declaration that a particular administrative regulation was unconstitutional and to enjoin its enforcement. Because the latter type action involves an issue of statewide public concern and im-

portance, it properly lies within the original jurisdiction of this court. *See, e.g., Gory Mech. Contracting, Inc. v. Phila. Hous. Auth.,* 579 Pa. 26, 855 A.2d 669 (2004). In contrast, a case like the one at bar, which has as its essence the redress of private injuries, belongs in the court of common pleas. Suffice it to say that an analysis of tribunal jurisdiction, although dealing with related concepts, is not dispositive of the question of immunity,[8] to which we now turn.

As noted above, in addition to suits seeking compensation, sovereign immunity bars claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials, but not those seeking prohibitory injunctions to restrain state action. *Bonsavage v. Borough of Warrior Run,* 676 A.2d 1330 (Pa.Cmwlth. 1996). Although the injunctive relief sought in Count I is all couched in terms of restraining conduct, it is the substance of the relief requested and not the form or phrasing of the requests which guides our inquiry. *See, e.g., Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund,* 561 Pa. 336, 342–43, 750 A.2d 299, 302–03 (2000). The first such request in Count I seeks to bar state officials from using any information gathered in the Stackhouse investigation or from using the resulting report for any purpose. We have no difficulty concluding that this request seeks to restrain conduct and, thus, is not barred by sovereign immunity.

Categorizing the second injunctive request, however, is not so straightforward. It asks the court to restrain officials from subjecting plaintiff "to any investigative process or system in which no training, guidelines, policy, limitation or restriction is utilized to protect the rights to which Plaintiff is entitled." Complaint

---

8. *Gory* provides an excellent illustration of this principle.

at 19; R.R. at 28a. While facially seeking to restrain conduct, the ultimate thrust of the relief requested is to obtain an order mandating imposition of guidelines, policies, limitations, and restrictions upon State Police internal affairs investigations. This is particularly so in light of the fact that conducting investigations is an indispensable function of the State Police, so asking that investigations be stopped unless and until other actions are taken effectively seeks an order mandating those actions. This court faced a similar issue in *Borough of Jefferson v. Century III Associates,* 60 Pa.Cmwlth. 94, 430 A.2d 1040 (1981), *vacated on other grounds,* 498 Pa. 57, 444 A.2d 665 (1982). As we stated in that case:

> Although the Borough's prayer for relief is couched in language expressing a desire to restrain DER and PennDot "from continuing in their negligent and unreasonable acts," the acts complained of are failure to require permits, failure to make studies, failure to inspect property, and failure to consider the safety of persons and property. Thus, the Complaint, read fairly and as a whole, seeks orders compelling affirmative action from DER and PennDot, and falls within the rule of immunity.

*Id.* at 1043 (footnote omitted). In similar fashion, we believe that common pleas properly dismissed Stackhouse's second injunctive request on the basis of immunity.

In addition to injunctive relief, Count I also included requests for declaratory relief. The applicability of the defense of sovereign immunity to declaratory judgment actions is not altogether clear. While the language in a number of cases seems to suggest that immunity is never a defense,[9] it would seem self-evident that where a request for a declaration of rights can have no effect nor serve any purpose other than as the legal predicate for a damage or other immunity-barred claim in the same action, the demand for declaratory relief ought to fall along with the claim it serves to support. The purpose of absolute sovereign immunity—to insulate state agencies and employees not only from judgments but also from being required to expend the time and funds necessary to defend suits—would be frustrated if the declaratory action were allowed to go forward under those circumstances. Our research has discovered no cases in which our Supreme Court has confronted or addressed such a fact pattern, although in *Hollinger v. Dep't of Pub. Welfare,* 19 Pa. Cmwlth. 74, 348 A.2d 161, 165 (1975), *vacated on other grounds,* 469 Pa. 358, 365 A.2d 1245 (1976), this court determined that an equitable request for an accounting was subject to the doctrine of immunity because its inevitable function was to form the predicate for a money judgment. While not on point, *Hollinger* would appear to be an appropriate analytical paradigm.

 At all events, the same result is dictated under other ordinary and well-settled principles governing declaratory judgments. Declaratory relief is a matter lying within the sound discretion of the trial court. *Gulnac v. S. Butler County Sch. Dist.,* 526 Pa. 483, 487, 587 A.2d 699, 701 (1991). Further, it is improper to utilize declaratory pronouncements to issue advisory opinions which can have no practical effect on the parties. *Id.* In *Gulnac,* our Supreme Court held:

> Once the trial court held that Appellees had no standing to seek injunctive relief against the striking teachers, an issue not presently before us, it becomes moot

---

9. *See Legal Capital,* 561 Pa. 336, 750 A.2d 299; *Wilkinsburg,* 129 Pa.Cmwlth. 47, 564 A.2d 1015; *Fawber,* 516 Pa. 352, 532 A.2d 429.

whether, in the abstract, the teachers had a theoretical right to strike under our Constitution. It was unnecessary to reach the constitutional issue and by doing so, the trial court rendered an advisory opinion which our courts are not entitled to do. The trial court's decision on standing ended this case. The complaint should have been dismissed. In not doing so, the trial court improperly reached to decide a constitutional issue and then decided it in a vacuum where it would have no practical effect on the parties. This was error, and a waste of judicial resources. This Court routinely attempts to avoid deciding cases on the basis of broad constitutional issues if at all possible and our trial courts should adhere to the very same principle. Ordinarily, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. *Greenberg v. Blumberg*, 416 Pa. 226, 206 A.2d 16 (1965). There was an abuse of that discretion here. The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment.

*Id.* (footnote omitted).

 Here, Stackhouse's requests for declaratory relief fall into two different categories. In paragraphs (a) and (b), Stackhouse seeks rulings that the investigative activities for which she seeks damages in Counts II and III violated her rights under the Pennsylvania Constitution. *See* Complaint at 18; R.R. at 27a. Since any such determination would provide a legal predicate to the success of her damage claims but would otherwise have no independent significance, we conclude

that these demands, if not directly barred by the same immunity which shields Counts II and III, were properly rejected by common pleas in the exercise of its sound discretion. Similarly, in paragraphs (c), (d), and (e), she seeks a declaration that the investigative processes of the State Police violate Article I, Section I of the Pennsylvania Constitution in various ways, including a lack of proper training, guidelines, limitations, procedures, etc. Again, the declarations sought amount to no more than the legal underpinnings of the mandatory injunction requests barred by sovereign immunity; thus, even if they were not themselves within the rule of immunity, common pleas did not abuse its discretion in refusing to exercise jurisdiction over them.

Accordingly, we reverse and remand for further proceedings with respect to injunctive relief concerning use of information gathered in the internal affairs investigation or the resulting General Investigative Report, but affirm the order of the court of common pleas in all other respects.

### O R D E R

AND NOW, this 8th day of February, 2006, the order of the Dauphin County Court of Common Pleas in the above captioned matter is hereby REVERSED, insofar as it dismissed the portion of Stackhouse's complaint at page 19, paragraph (a) that seeks injunctive relief restraining the Defendants from utilizing the General Investigative Report and any information generated as a result of its investigation. The case is REMANDED for further proceedings in accordance with the foregoing opinion. The dismissal is AFFIRMED in all other respects.

Jurisdiction is relinquished.