**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1785
_____

GLENN ESKRIDGE,
                            Appellant

v.

PHILADELPHIA HOUSING AUTHORITY; JOANNE STRAUSS;
KELVIN A. JEREMIAH

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civ. No. 2-15-cv-05576)
District Judge: Honorable Wendy Beetlestone

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 22, 2018

Before:  GREENAWAY, JR., and KRAUSE, *Circuit Judges*, and JONES, *District Judge**

(Opinion filed: January 24, 2018)
_____

OPINION*
_____

_____

* The Honorable John E. Jones III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Glenn Eskridge, an African American Sergeant in the Philadelphia Housing Authority Police Department (PHAPD), appeals the District Court's orders granting summary judgment against him on his retaliation and equal protection claims arising out of his demotion and alleged subsequent mistreatment. We will affirm.

## I. Background

Eskridge dated Nanette Jordan, an Officer in the PHDPA, from 2005 to 2015. In 2013, after the Philadelphia Housing Authority (PHA) instituted a policy prohibiting any employee from directly or indirectly supervising another employee with whom he or she has a "close relationship," including "a romantic or intimate relationship," App. 72–73, PHA's Office of Audit and Compliance (OAC) began looking into whether Eskridge and Jordan's relationship complied with the policy. Because Eskridge, an Inspector at the time, did not then supervise Jordan, OAC initially concluded their relationship did not violate the policy. But when subsequent personnel changes placed Jordan within Eskridge's chain of command, OAC reversed course and urged Human Resources to take corrective action. After considering several options, PHA's head of Human Resources, Joanne Strauss, recommended moving Eskridge to a lower rank; Kelvin Jeremiah, PHA's President and Chief Executive Officer, then approved that recommendation; and, in July 2014, Eskridge was demoted from Inspector to Sergeant, a position he retains to this day.

2

Well before his demotion, Eskridge had learned of complaints that other black PHAPD supervisors were mistreating white officers, and, in late 2013, he had brought the matter to the attention of PHAPD's Chief of Police, warning him, "[I]f you don't do something you're going to have a lawsuit." App. 94. As a result, when—six months later—Eskridge found out he was being demoted, he allegedly believed it was a consequence of that warning, and so in June 2014 he filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging discrimination, retaliation, and hostile work environment.

That October, Eskridge assumed his role as a Sergeant—he had been on paid medical leave since before his demotion for "stress and anxiety," App. 193, but conditions at work, he maintains, quickly changed. First, he was assigned "extra . . . responsibilities." App. 136. Likewise, when the PHDPA thereafter began assigning Sergeants longer shifts, all Sergeants were teamed in pairs except Eskridge, who was required to work his shift alone. Finally, Eskridge applied for promotions to Lieutenant or Inspector but did not receive either position.

Eskridge then filed this action in the Eastern District of Pennsylvania, naming as Defendants PHA, Strauss, and Jeremiah, and bringing claims for (1) discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act (PHRA); (2) retaliation in violation of the First Amendment; and (3) denial of equal protection in violation of the Fourteenth Amendment. Defendants moved for summary judgment. The District Court granted the

3

motion in part, entering summary judgment on all of Eskridge's claims other than his retaliation claims to the extent they were based on conduct occurring after his demotion or his equal protection claims, on the ground that Defendants' briefing had not addressed the factual basis for those claims. After giving Defendants leave to file another motion for summary judgment, the District Court found the remaining claims insufficient and granted summary judgment on them as well.

This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), and we have jurisdiction under 28 U.S.C. § 1291. We review a District Court's decision granting summary judgment de novo. *Sikora v. UPMC*, 876 F.3d 110, 113 (3d Cir. 2017). Summary judgment is appropriate when, taking all facts and inferences in favor of the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)).

## III. Discussion

Eskridge purports to appeal the dismissal of all his claims, but his brief discusses only his retaliation and equal protection claims, and we therefore deem the remainder forfeited. *Royce v. Hahn*, 151 F.3d 116, 125 (3d Cir. 1998) ("[W]e will not review matters that were not even discussed in the briefs filed in this Court."). For the reasons

4

explained below, we conclude Eskridge has not identified any genuine dispute of material fact with respect to either set of claims.

As an initial matter, we are compelled to address the strikingly inadequate advocacy of Eskridge's attorney, Brian Puricelli. After review of his largely incomprehensible brief, riddled with typographical and grammatical errors, it is apparent that Mr. Puricelli not only has failed to live up to his obligations to his client, but also has violated his duties as an Officer of the Court. Of particular note, Mr. Puricelli's assertions of material fact generally are not followed by any citations to the record. Not only is this conduct in violation of the requirement that briefs contain "citations to the . . . parts of the record on which the appellant relies," Fed. R. App. P. 28(a)(8)(A), but our independent review of the record indicates many of these assertions lack any support at all. What's more, among the few times Mr. Puricelli does provide record citations, he misrepresents outright what the record shows. While we have pierced through Mr. Puricelli's deficiencies to consider fully the substance of Eskridge's appeal, we admonish Mr. Puricelli that future noncompliance with his obligations and responsibilities as counsel before this Court will risk a referral for disciplinary action.

## A.    Retaliation Claims

To prove retaliation under Title VII, the PHRA, or the First Amendment, a plaintiff must show that his "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (Title VII); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 792 n.9 (3d Cir. 2016)

5

(PHRA); *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) (First Amendment). Because Eskridge has not identified any evidence showing his protected activity was linked to his demotion or alleged subsequent mistreatment, he has not met this burden and, therefore, he cannot establish his retaliation claims as a matter of law.

First, while Eskridge asserts he was demoted because he complained of discrimination in the PHAPD, there is no indication that the individuals who made that decision—Strauss and Jeremiah—knew of Eskridge's complaints at the time he was demoted, and "for protected conduct to be a . . . factor in a decision, the decisionmakers must be aware of the protected conduct," *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). While before us, Eskridge omits to mention the lack of evidence on this point, he acknowledged it in the District Court and argued there nevertheless was a "question of material fact" as to whether "Strauss and Jeremiah had [such] knowledge" because Eskridge "cannot recall if he had conversations with either . . . about the complaints." App. 88. Such "speculation and conjecture," however, "may not defeat a motion for summary judgment." *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) (brackets omitted) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)).

Second, Eskridge's claim based on alleged mistreatment following his demotion likewise lacks record support. While Strauss and Jeremiah were both aware that Eskridge had filed an EEOC charge, there is no evidence that either played any role in the decisions to assign him more work or not to promote him. Eskridge asserts it was

6

"Jeremiah's decision to increase [his] workload," Appellant's Br. 9, but the portion of the record he relies on for that proposition shows only that his workload was increased, not that Jeremiah had anything to do with it. Indeed, when Eskridge was asked at his deposition to identify the individual responsible for assigning him more work, he replied: "I don't know. I don't know who." App. 186. Likewise, though Eskridge contends he was "skipped over for promotions by Strauss and Jeremiah," Appellant's Br. 5, nothing in the record shows Strauss or Jeremiah were involved in those decisions.

Shifting arguments, Eskridge suggests that, regardless of who was responsible for any of this alleged mistreatment, we should infer it was done with a retaliatory motive because "only . . . 4 months elapsed between [his] . . . EEOC complaint" and the employment actions at issue. Appellant's Br. 9. We disagree. For "temporal proximity" between protected activity and an adverse action to establish causation on its own, the gap must be "very close," *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)), and we have found gaps even shorter than four months insufficient to prove causation, *see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."). While Eskridge alternatively argues the broader "circumstances" here support that inference, Appellant's Br. 10, he does not support that assertion with any citation to the record.

7

In sum, we will affirm the District Court's grant of summary judgment on Eskridge's retaliation claims.

### B.      Equal Protection Claims

We also will reject Eskridge's equal protection claims.  To establish a denial of equal protection under the Fourteenth Amendment, a plaintiff "must prove the existence of purposeful discrimination." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).  Over four pages of briefing on these claims, the only evidence Eskridge offers to meet that standard is the following: "Plaintiff is African American."  Appellant's Br. 18.  That is woefully insufficient.  The rest of Eskridge's arguments are devoted to the District Court's ostensibly improper decision to grant Appellees leave to file a second summary judgment motion, but that decision is not before us, and even if it were, a summary judgment motion may be filed at any time "the court orders."  Fed. R. Civ. P. 56(b).  We thus perceive no error in the District Court's grant of summary judgment on Eskridge's equal protection claims.

\*      \*      \*

For the foregoing reasons, we will affirm the District Court's orders granting Appellees summary judgment on all claims.