# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Graziano,                              :
                          Petitioner          :
                                              :
             v.                               :      No. 468 M.D. 2019
                                              :      Submitted:  August 28, 2020
John Wetzel, Secretary of the                 :
Pennsylvania Department of                    :
Corrections,                                  :
                          Respondent          :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge[1]
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                          **FILED:  November 9, 2021**


Before the Court in our original jurisdiction are the preliminary objections of John Wetzel, Secretary of the Pennsylvania Department of Corrections (Department), to inmate Edward Graziano's *pro se* amended petition for review (amended petition).  Graziano seeks a declaratory judgment that the Department's "Swift, Certain and Fair" (SCF) sanction procedure violates his constitutional rights and various state laws and injunctive relief to prohibit further implementation of the SCF sanction procedure.[2]  Graziano also seeks leave to file a second amended

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

[2] In an unreported, single-judge opinion of this Court, Judge Fizzano Cannon denied an amended motion for preliminary injunction filed by Graziano. *Graziano v. Wetzel* (Pa. Cmwlth.,

petition for review. For the following reasons, we sustain the Secretary's preliminary objections, in part, overrule the Secretary's preliminary objections, in part, and grant Graziano's application for leave to file a second amended petition for review.

## I. BACKGROUND

Graziano avers in the amended petition that the Department adopted the SCF sanction procedure that is being implemented within the Department's state correctional institution (SCI) housing units. (Amended Petition (Am. Pet.) ¶ 4.) Graziano avers that the SCF sanction procedure applies to all inmates in the housing unit with or without the inmate's consent. (Am. Pet. ¶ 13.) The SCF sanction procedure has its own guidelines and targets preexisting rule infractions.[3]

The SCF sanction procedure requires staff members who witness any infractions in the housing unit to complete a SCF infraction sheet, setting forth the inmate's name and inmate number, the date of the infraction, and the type of rule infraction involved for review by the Unit Sergeant. (Am. Pet. ¶¶ 5-6; Ex. A.1 ¶ 1(a), (b); Ex. A.2.) With a level one sanction, which is applicable when an inmate has four or fewer SCF infractions within the last 365 days, the Unit Sergeant can punish the inmate with a reprimand and warning or provide a greater punishment up to and including five days of cell restriction. (Am. Pet. ¶ 6; Ex. A.2.) The Unit

---

No. 468 M.D. 2019, filed March 1, 2021). In so doing, Judge Fizzano Cannon described the amended petition for review as differing from the original petition for review in two notable respects. "First, the amended petition names [Secretary Wetzel (Secretary)] as the sole respondent. Second, the amended petition makes no allegations relating to any application of the SCF program to Graziano. Instead, the amended petition alleges that the SCF policy is being implemented in every housing unit within the SCI system." *Id.*, slip op. at 3 (record citations omitted).

[3] The Department and the parties use the words "violation," "infraction," and "misconduct" interchangeably in the relevant regulations, policies, procedures, and pleadings. In this opinion, we consider all three terms that describe the event when an inmate violates a Department rule to have the same meaning.

2

Sergeant then counsels the inmate, requests the inmate sign the SCF infraction sheet, and provides the inmate with a copy of the form. (Am. Pet. ¶ 6; Ex. A.1 at ¶ 1(c).) The accused inmate is not afforded the opportunity to be heard. (Am. Pet. ¶ 6.)

If the inmate's misconduct history reveals that it is the inmate's fifth, sixth, or seventh SCF infraction in the past 365 days, the Unit Manager completes the "level two" section on the SCF infraction sheet and determines the inmate's sanction based on the level two sanction guidelines. (Am. Pet. ¶ 9; Ex. A.1 ¶ 1(d); Ex. A.2.) The level two sanction guidelines require that the matter be treated as an informal misconduct, resulting in seven to twenty-one days of cell restriction, depending on if it is the inmate's fifth, sixth, or seventh infraction. (Am. Pet. ¶ 9; Ex. A.1 ¶ 1(d); Ex. A.2.) The decision is not the result of a formal adjudication based on the inmate's guilt or innocence of the charge. (*Id.*)

If the SCF infraction is the eighth or more of its kind within the prior 365 days, a Department hearing examiner (Hearing Examiner) becomes involved for a formal resolution. (Am. Pet. ¶ 10.) If the inmate is found or pleads guilty to the SCF infraction before the Hearing Examiner, the Hearing Examiner is required to sanction the inmate to thirty days of cell restriction in accordance with the SCF infraction sheet "level three" guidelines. (Am. Pet. ¶ 11; Ex. A.2.) All SCF sanctions run consecutively to any previously incurred sanction. (Am. Pet. ¶ 12.)

Graziano contends that the SCF sanction procedure violates his rights under numerous provisions of the United States and Pennsylvania Constitutions; specifically, he appears to assert violations of his procedural due process rights and substantive due process rights.[4] Graziano argues that the SCF sanction procedure is

---

[4] The guarantee of due process emanates from the Fourteenth Amendment to the United States Constitution and from Article I, Section 1 (Inherent rights of mankind); Section 9 (Rights

3

facially unconstitutional and unconstitutional as applied to him. Much of his due process argument focuses on his characterization of impermissible commingling of functions.

Graziano also seeks declaratory relief that the SCF sanction procedure constitutes an invalid regulation. In support of that position, Graziano asserts that the SCF sanction procedure functions as a regulation but was not promulgated pursuant to the Commonwealth Documents Law (CDL),[5] the Regulatory Review Act (RRA),[6] and the Commonwealth Attorneys Act (CAA).[7] Furthermore, Graziano contends that the SCF sanction procedure is unreasonable, inconsistent with the Department's Inmate Discipline regulation (37 Pa. Code § 93.10) and its Inmate Discipline policy (DC-ADM 801), and void for vagueness because it does not interpret or reference the Inmate Discipline regulation and Inmate Discipline policy.[8] Graziano also appears to seek declaratory relief arguing that the SCF sanction procedure fails to protect or provide equitable provisions for inmates in violation of

of accused in criminal prosecutions); and Section 11 (Courts to be open; suits against the Commonwealth) of the Pennsylvania Constitution.

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602, and 45 Pa. C.S. §§ 501-907, which, collectively, are known as the "Commonwealth Documents Law."

[6] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-.14.

[7] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 to -506.

[8] 37 Pa. Code § 93.10(a) requires the Department to provide inmates with "[r]ules which define expectations and prohibitions for inmate behavior." The regulation also establishes two classes of misconduct charges, Class I and Class II, and the types of sanctions that may be imposed for a violation of the prison rules. *Id.* The regulation mandates that the Department provide written procedures for inmate discipline that include written notice of charges; the opportunity for the inmate to tell his or her story and to present relevant evidence; assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively; a written statement of the decision; and the opportunity to appeal. 37 Pa. Code § 93.10(b). The Department must provide the written procedures in the Inmate Handbook and its policy DC-ADM 801— Inmate Discipline. *Id.*

the Mental Health and Intellectual Disability Act of 1966 (Mental Health Act).[9] Graziano seeks an injunction directing the Secretary to suspend implementation and enforcement of the SCF sanction procedure as currently structured and declaratory relief concerning his various constitutional and state law theories.

Secretary Wetzel filed six preliminary objections to the amended petition.[10] First, Secretary Wetzel objects to this Court's original jurisdiction over Graziano's claims concerning internal prison disciplinary matters. Second, Secretary Wetzel contends that Graziano failed to state a due process claim pursuant to the Fourteenth Amendment to the United States Constitution. Third, Secretary Wetzel contends that Graziano lacks standing to challenge the SCF sanction procedure because he fails to assert how it adversely affected him. Fourth, Secretary Wetzel contends that any claim against him pursuant to the Pennsylvania Constitution and the remedy of mandatory injunctive relief is barred by sovereign immunity. Fifth, Secretary Wetzel argues that Graziano fails to state a claim that the SCF sanction procedure violates the RRA, the CDL, and the CAA. Sixth, Secretary Wetzel argues that Graziano fails to state a claim that the SCF sanction procedure violates the Mental Health Act.

## II. STANDARD OF REVIEW

A petition for review "is a fact[-]pleading document and detailed factual allegations will generally be required to describe adequately the challenged action." *Off. of Att'y Gen. ex rel. Corbett v. Locust Twp.*, 49 A.3d 502, 507 (Pa. Cmwlth. 2012) (en banc) (citations omitted). In ruling on Secretary Wetzel's preliminary objections in the nature of a demurrer, we must accept as true all

---

[9] Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101-4704.

[10] For ease of discussion, we have reordered Secretary Wetzel's preliminary objections.

5

well-pleaded material allegations in the amended petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). We are not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* We may also consider documents or exhibits attached to the petition. *Diess v. Pa. Dep't of Transp.*, 935 A.2d 895, 903 (Pa. Cmwlth. 2007). It is not necessary for us, however, to accept as true any averments in the petition that conflict with the exhibits attached to it. *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of overruling the demurrer. *Id.*

### III. DISCUSSION

### A. Original Jurisdiction

Secretary Wetzel argues that unless Graziano can identify a constitutional right limited by the Department, the Court does not have original jurisdiction over claims involving internal prison disciplinary matters.[11] (Secretary Wetzel's Preliminary Objections ¶ 11.) The Pennsylvania Supreme Court, in *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), closely examined the scope of our original jurisdiction relating to a prison decision that denied the inmate's grievance concerning the confiscation and destruction of his personal property (*i.e.*, civilian clothing). *Bronson*, 721 A.2d at 358. Simply stated, "[u]nless 'an inmate can identify a personal or property interest . . . not limited by the

---

[11] Section 761(a)(1) of the Judicial Code, 42 Pa. C.S. § 761(a)(1), provides, in pertinent part, that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity."

6

Department [of Corrections'] regulations and which has been affected by a final decision of the [D]epartment[,]' the decision is not an adjudication subject to the court's review." *Id.* at 359 (quoting *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988)).

Graziano contends we have original jurisdiction in this matter because the SCF sanction procedure "fails to afford inmates procedural due process or comport with the rudimentary requirements of fair play guaranteed by Article I, [Sections 9 and 11] of the Pennsylvania Constitution." (Am. Pet. ¶ 15(a).) Secretary Wetzel did not file a demurrer to the Pennsylvania Constitutional claims. At this stage of the proceedings, Graziano has alleged a constitutional right limited by the Department through a final decision providing us with original jurisdiction in this matter. Thus, the Secretary's preliminary objection for lack of original jurisdiction is overruled.

### B. Demurrer to Federal Due Process Claim

1. Demurrer—Federal Procedural Due Process Claim

Secretary Wetzel argues that Graziano fails to state a procedural due process claim because, in order to trigger federal due process protections, a legally cognizable liberty interest must be identified. (Secretary's Preliminary Objection ¶ 15; Secretary's Brief at 8-9.) "In analyzing a due process claim, the first step is to determine 'whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment.'" *Lopez v. Pa. Dep't of Corr.*, 119 A.3d 1081, 1085 (Pa. Cmwlth. 2015), *aff'd*, 144 A.3d 92 (Pa. 2016) (quoting *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). Once it is determined

7

that the interest is protected by the Due Process Clause, the question is then "what process is due to protect it." *Shoats*, 213 F.3d at 143.[12]

The United States Supreme Court has explained that procedural due process rights are triggered by a deprivation of a legally cognizable liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Additionally, "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause . . . [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (addressing transfer to mental hospital); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (addressing involuntary administration of psychotropic drugs)).[13]

Recently, in *Feliciano*, we examined whether an inmate who tested positive for an illicit substance and was sanctioned to thirty days in the Restricted Housing Unit (RHU) was denied procedural due process because the Department failed to

---

[12] "While decisions of federal district courts and courts of appeals, including those of the Third Circuit, are not binding on Pennsylvania courts, even where a federal question is involved, they have persuasive value." *Garber v. Pa. Dep't of Corr. Sec'y*, 851 A.2d 222, 226 n.9 (Pa. Cmwlth. 2004). "It is appropriate to follow them where the United States Supreme Court has not spoken." *Id.* (citing *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 772 n.11 (Pa. Cmwlth. 1997)).

[13] To the extent that Graziano's procedural due process claim is based on alleged violations of the Department's internal policies or procedures, we note that the Department's policies and procedures do not, in themselves, confer upon inmates any actionable rights. *See Williams v. Wetzel*, 232 A.3d 652, 654 (Pa. 2020); *Dantzler v. Wetzel*, 218 A.3d 519, 523 (Pa. Cmwlth. 2019) (en banc), *abrogated on other grounds by Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269 (Pa. Cmwlth. 2021) (en banc).

provide him with the misconduct report and urinalysis test results prior to his misconduct hearing. *Feliciano*, 250 A.3d at 1274. We explained:

> Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." [*Sandin*, 515 U.S. at 484.] Lesser restraints on a prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." *Id*. If a prisoner ha[s] no protected liberty interest in remaining free of disciplinary custody, then the state owes him no process before placing him in disciplinary confinement.

*Id*. at 1275-76 (quoting *Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003)). We then reexamined *Sandin* and its progeny and concluded that, rather than creating a *per se* bar against an inmate's right to procedural due process in each situation where internal discipline was imposed, *Sandin* requires a "fact[ ]specific inquiry." *Id.* at 1279. The proper method for determining under *Sandin* whether an inmate is entitled to procedural due process in the context of an administrative determination that affects his housing situation

> is to consider (i) the conditions of confinement relative to administrative segregation, (ii) the duration of that confinement generally, and (iii) the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences. We also emphasize that a liberty interest can potentially arise under less[ ]severe conditions when the deprivation is prolonged or indefinite.

*Id.* (quoting *Aref v. Lynch*, 833 F.3d 242, 255 (D.C. Cir. 2016)).

Based on our review of the SCF sanction procedure, we note that the sanctions range from a written reprimand and warning up to ultimately thirty days of cell restriction. We have previously held that thirty days of discipline in the form of a cell restriction did not implicate a liberty interest that requires due process. *Dunbar v. Wetzel* (Pa. Cmwlth., No. 75 M.D. 2019, filed January 21, 2020) (per curiam), slip

9

op. at 9;[14] *Horan v. Newingham* (Pa. Cmwlth., No. 2622 C.D. 2015, filed October 24, 2016), slip op. at 12. Moreover, situations during incarceration, albeit through discipline or not, that result in a short-term loss of specific privileges such as the use of the telephone, yard time, visitation, or commissary, are in conformity with the expected perimeters of the sentence imposed by a court of law. *See, e.g.*, *Mays v. Kosinski*, 86 A.3d 945, 949, 950 n.10 (Pa. Cmwlth. 2014) (holding that changed custody level and subsequent transfer that results in restricted freedom of movement and resulted in loss of numerous privileges, including telephone access, job advancement, and visiting rights were not liberty interests warranting due process protection); *Williams*, 232 A.3d at 654 (holding that "the cases are legion confirming that inmates have no constitutionally[ ]protected interest in maintaining prison employment").

Graziano has not sufficiently pled that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life. There is nothing in the amended petition, as currently constituted, that would allow us to conclude that his procedural due process rights were violated. We will, therefore, sustain Secretary Wetzel's preliminary objection in the nature of a demurrer, but we do so without prejudice.

Graziano has sought leave of this Court to file a second amended petition for review. We are mindful that, "[w]here there is some reasonable possibility that amendment can be accomplished successfully, the right to amend should not be withheld." *Lutz v. Springettsbury Twp.*, 667 A.2d 251, 254 (Pa. Cmwlth. 1995) (citing *Otto v. Am. Mut. Ins. Co.*, 393 A.2d 450, 451 (Pa. 1978)). Two factors

---

[14] According to Section 414(a) of this Court's internal operating procedures, 210 Pa. Code § 69.414(a), "an unreported panel decision of this Court issued after January 15, 2008," may be cited for its persuasive value.

support granting Graziano the opportunity to file a second amended petition. First, while a decision was pending on the preliminary objections, Graziano filed two applications for preliminary injunctions averring facts clearly related to his federal procedural due process claims. While we cannot consider the facts averred outside the pleadings (*i.e.*, Graziano's applications for preliminary injunctions) for purposes of the Secretary's preliminary objections, if Graziano chooses to file a second amended petition he could include similar averments that could potentially provide an additional basis for this Court's exercise of original jurisdiction. Second, and of greater import, is that we recently provided clear guidance in *Feliciano* regarding the necessary components of a legally viable federal procedural due process claim. The Court decided *Feliciano* after Graziano submitted his amended petition, the Secretary filed his preliminary objections, and the parties briefed the issues. We, therefore, grant Graziano's application for leave to file a second amended petition for review and provide him with the opportunity to plead a viable federal procedural due process claim in line with *Feliciano*.

### 2. Demurrer—Federal Substantive Due Process Claim

Liberally construing Graziano's amended petition, we believe he is also asserting a substantive due process claim. We will thereby consider Secretary Wetzel's preliminary objection in the nature of a demurrer to the federal due process claim to include Graziano's substantive due process claim. (Secretary's Preliminary Objection ¶ 15; Secretary's Brief at 8-9.)

"'The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs[]' . . . in order to 'guarantee protect[ion] against government power arbitrarily and oppressively exercised.'" *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting

11

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir.), *cert. denied*, 531 U.S. 1011 (2000)). To maintain a substantive due process claim the individual must have been deprived of a particular interest that is protected by the substantive component of the Due Process Clause itself (and not a state-created liberty interest). *Steele*, 855 F.3d at 501. "The substantive component of the Due Process Clause provides protection against government interference with certain fundamental rights and liberty interests." *Taylor v. Pa. State Police*, 132 A.3d 590, 608-09 (Pa. Cmwlth. 2016) (citing *Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004)). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (explaining "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision[]making in this unchartered area are scarce and open-ended").

Where an individual has asserted a liberty interest protected by substantive due process, he must also show that "the government's deprivation of that protected interest shocks the conscience." *Steele*, 855 F.3d at 502. "The [United States] Supreme Court has instructed that we must apply the 'shocks the conscience' standard where . . . the challenged government action is executive in nature rather than legislative." *Id*. (citing *County of Sacramento*, 523 U.S. at 845-47). Yet, we are also cognizant that the United States "Supreme Court repeatedly has emphasized that maintaining internal security and order in jails and prisons are 'legitimate governmental objectives' and that courts must give prison officials considerable

discretion to manage internal security in their institutions." *Id*. at 505 (citing *Sandin*, 515 U.S. at 482-83).

Section 506 of The Administrative Code of 1929[15] empowers Secretary Wetzel to prescribe rules and regulations concerning the Department's operations. The SCF sanction procedure clearly was issued to aid in maintaining internal security within the SCIs throughout the Commonwealth. Graziano's claim does not involve a fundamental right provided for and protected by the substantive component of the Due Process Clause. Moreover, based on the facts as averred, Secretary Wetzel's implementation of the SCF sanction procedure was neither an arbitrary act that "shocks the conscience" nor is it an example of government power oppressively exercised. Accordingly, we sustain the Secretary's preliminary objection in the nature of a demurrer and dismiss Graziano's substantive due process claim with prejudice.

## C. Standing

We next review Secretary Wetzel's preliminary objection that asserts Graziano lacks standing to challenge the SCF sanction procedure because he does not aver any facts as to how it adversely affected him in the amended petition. (Secretary Wetzel's Preliminary Objections ¶ 13; Secretary's Brief at 8.) Graziano seeks a declaratory judgment that the SCF sanction procedure violates his Pennsylvania and United States constitutional rights.

Petitions seeking declaratory relief are governed by the provisions of the Declaratory Judgments Act (DJA), 42 Pa. C.S. §§ 7531-7541. As this Court has previously explained:

> The purpose of the [DJA] . . . is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal

---

[15] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 186.

13

relations, and the [DJA] is to be liberally construed and administered. 42 Pa.[ ]C.S. § 7541(a). . . . Declaratory judgment must not be employed to determine rights in anticipation of events that may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Off. of Governor v. Donahue*, 59 A.3d 1165, 1167 n.5 (Pa. Cmwlth. 2013), *aff'd*, 98 A.3d 1223 (Pa. 2014) (citations omitted). "[W]hether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion . . . of a court of original jurisdiction." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019).

In exercising our discretion, we are cognizant that "[o]ne seeking judicial resolution of a dispute must satisfy a threshold requirement of standing to bring the action by demonstrating a substantial, direct and immediate interest in the outcome of the litigation." *Finn v. Rendell*, 990 A.2d 100, 103 (Pa. Cmwlth. 2010). Specifically:

A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative.

*Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018) (en banc) (citations omitted). An improper petitioner is one "who is not adversely affected in any way by the matter he seeks to challenge . . . ." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975).

When reviewing Secretary Wetzel's preliminary objection for lack of standing, we are limited to the facts pled in the amended petition for review and any documents or exhibits attached to it. *Diess*, 935 A.2d at 903. Procedurally, Graziano cannot incorporate into his amended petition facts pertaining to the SCF infraction he incurred in March 2019 through his answer to the Secretary's preliminary

14

objections. Consequently, we will not consider the facts surrounding Graziano's March 2019 sanction in our standing analysis.

Graziano is incarcerated under the Department's jurisdiction and the SCF sanction procedure applies to him while confined in a SCI. Given the range of violations enumerated in the procedure and the sanctioning structure, he has a direct interest in determining whether the SCF sanction procedure violates his rights, and that interest is not remote or speculative. Moreover, taking into consideration that the SCF sanction procedure is being applied on a Commonwealth-wide basis, we believe that it is prudent to review his claims and resolve any uncertainty and insecurity with respect to rights, status, and other legal relations. Therefore, Secretary Wetzel's preliminary objection for lack of standing is overruled.[16]

### D. Sovereign Immunity

Secretary Wetzel next argues that "[a]ny claim pursuant to the Pennsylvania Constitution is barred by sovereign immunity."[17] (Secretary's Brief at 8.) The law is clear, however, that sovereign immunity does not apply to a declaratory judgment action. *Bullock v. Horn*, 720 A.2d 1079, 1081-82 (Pa. Cmwlth. 1998) (holding that "immunity was not intended as a shield for Commonwealth officials against alleged violations of constitutional and/or statutory rights"); *Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*, 750 A.2d 299, 302 (Pa. 2000) (holding sovereign

---

[16] Had we concluded that Graziano failed to aver sufficient facts to establish standing, we would have allowed him to amend his amended petition to incorporate the facts set forth in his amended motion for a preliminary injunction.

[17] "Sovereign immunity is an affirmative defense which ordinarily should be raised as new matter, but may be raised in preliminary objections when to delay a ruling thereon would serve no purpose." *Stackhouse v. Pa. State Police*, 892 A.2d 54, 60 n.7 (Pa. Cmwlth.), *appeal denied*, 903 A.2d 539 (Pa. 2006) (citing *Faust v. Dep't of Revenue*, 592 A.2d 835, 838 n.3 (Pa. Cmwlth. 1991), *appeal denied*, 607 A.2d 257 (Pa. 1992)). We note that Graziano did not object to Secretary Wetzel raising sovereign immunity in his preliminary objections.

immunity is not applicable to declaratory judgment actions.); *Finn*, 990 A.2d at 105. Accordingly, Secretary Wetzel's preliminary objection that any claim pursuant to the Pennsylvania Constitution is barred by sovereign immunity is overruled.

The Secretary also argues that Graziano's claim seeking injunctive relief is also barred by sovereign immunity. (Secretary's Brief at 8.) Graziano filed a declaratory judgment action that seeks injunctive relief to "suspend the implementation and enforcement of [the] SCF [sanction procedure] as it is currently structured." (Am. Pet., Relief Requested, ¶ B.1.) Graziano, to secure a permanent injunction, must establish his clear right to relief and the necessity of the relief to prevent a legal wrong for which there is no adequate redress at law. *Singleton v. Lavan*, 834 A.2d 672, 674 (Pa. Cmwlth. 2003).

This Court reviewed what is commonly referred to as the Pennsylvania Sovereign Immunity Act (Sovereign Immunity Act), 42 Pa. C.S. §§ 8521-8528, when a party sought injunctive relief from a Commonwealth agency in *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330 (Pa. Cmwlth. 1996). We determined that the "General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief" and concluded that the plaintiffs' "claim for injunctive relief against [the Commonwealth agency] is also barred by sovereign immunity." *Id*. at 1331-32 (emphasis omitted).

Ten years later, we held that sovereign immunity bars claims seeking mandatory injunctive relief to compel affirmative action by Commonwealth officials.[18] *Stackhouse*, 892 A.2d at 61. A mandatory injunction commands the

---

[18] We later clarified that "[t]he only exception to the rule barring mandatory injunctions against Commonwealth parties is that an action in mandamus will lie to compel a state officer or agency to perform a ministerial or mandatory statutory duty." *Finn*, 990 A.2d at 105 (citing *Stackhouse*, 892 A.2d at 59 n.6).

performance of some positive or affirmative act to preserve the status quo and is granted only in exceptional circumstances. *Mazzie v. Cmwlth.*, 432 A.2d 985, 988 (Pa. 1981); *Bd. of Dirs. of Sch. Dist. of City of Scranton v. Roberts*, 320 A.2d 141, 144 (Pa. Cmwlth. 1974), *aff'd*, 341 A.2d 475 (Pa. 1975). Conversely, sovereign immunity did not bar claims seeking prohibitory injunctions to restrain state action. *Stackhouse*, 892 A.2d at 61. A prohibitory injunction enjoins the doing of an act that will change the status quo. *Mazzie*, 432 A.2d at 988. We explained that it is the substance of the relief requested and not the form or phrasing of the requests that guides our inquiry of the type of injunctive relief sought. *Stackhouse*, 892 A.2d at 61 (citing *Legal Cap., LLC.*, 750 A.2d at 302-03).

This Court is not convinced at this stage of the litigation that the relief sought by Graziano may only be granted through the issuance of an affirmative injunction against the Department. At its core, regardless of verbiage employed, this matter seeks a declaratory judgment that the Department's SCF sanction procedure violates Graziano's constitutional rights and various state laws and seeks to prohibit the Department from enforcing the SCF sanction procedure. If Graziano ultimately prevails in this action, this Court, in fashioning the appropriate relief will be mindful of the protections afforded the Department through the doctrine of sovereign immunity. For this reason, we overrule Secretary Wetzel's preliminary objection based on sovereign immunity.

### E. Demurrer—The RRA, CDL, and CAA

Secretary Wetzel contends that Graziano fails to state a claim that the SCF sanction procedure violated the RRA and CDL. (Secretary's Preliminary Objection ¶ 18; Secretary's Brief at 9.) The Secretary argues that: (1) the SCF sanction procedure is a bulletin that does not require the formal rulemaking procedures;

17

and (2) the RRA does not create a private cause of action allowing Graziano to challenge this issue. Graziano argues that the SCF sanction procedure is an "invalid regulation for failing to comply with the general rule for promulgating regulation[s] through the formal notice-and-comment rule-making and regulatory-review procedures prescribed in the [CDL], the [RRA] and the [CAA]." (Am. Pet., Relief Requested, ¶ A.3.)

### 1. Formal Rulemaking Procedures Not Required

We will first address whether the SCF sanction procedure was required to be promulgated in compliance with the CDL, RRA, and CAA. "[T]he first step in analyzing whether a cause of action has been stated with respect to the [CDL] or [RRA] is to determine if the [procedures] are in fact 'regulations' for purposes of those acts or if they are . . . mere 'policy amendments' or 'internal prison management decisions.'" *Small v. Horn*, 722 A.2d 664, 669 (Pa. 1998). We have previously explained that the CDL, RRA, and CAA

> establish a mandatory, formal rulemaking procedure that is, with rare exceptions, required for the promulgation of all regulations. Under the [CDL], an agency must give notice to the public of its proposed rulemaking and an opportunity for the public to comment. Under the [RRA], an agency must also submit its proposed regulation to the [Independent Regulatory Review Commission (IRRC)] for public comment, recommendation from IRRC, and, ultimately, IRRC's approval or denial of a final-form regulation. The [CAA] requires the agency to submit all proposed regulations to the Attorney General and Governor's Office of General Counsel for review of the form and legality.

*Naylor v. Dep't of Pub. Welfare*, 54 A.3d 429, 434 (Pa. Cmwlth. 2012), *aff'd*, 76 A.3d 536 (Pa. 2013) (footnotes omitted) (citations omitted). The CDL, RRA, and CAA provide a procedure that must be followed whenever an administrative agency issues binding regulations. *Martin v. Wetzel* (Pa. Cmwlth., No. 136 M.D. 2015, filed December 15, 2015), slip op. at 6. An agency, however,

does not have to promulgate regulations for every matter under its authority. "Only those directives that 'concern the interaction of [Department] inmates and employees with the community at large' must be published." *Martin*, slip op. at 6 (quoting *Bundy v. Beard*, 924 A.2d 723, 727 (Pa. Cmwlth.), *aff'd*, 941 A.2d 646 (Pa. 2007), *cert. denied*, 553 U.S. 1098 (2008)).

Here, the Secretary determined that implementation of the SCF sanction procedure did not necessitate use of the legislative rule process because the procedure concerned internal prison management to ensure public safety—specifically, maintaining order and discipline within the SCIs by sanctioning inmate misbehavior. As we have previously noted, Secretary Wetzel is empowered to manage the Commonwealth's SCIs by prescribing rules and regulations concerning the Department's operations. Moreover, the effect of the SCF sanction procedure on the general public is minimal and not the type of procedure the General Assembly intended to be subjected to the public participation process of the CDL or RRA. Accordingly, we sustain Secretary Wetzel's preliminary objection in the nature of a demurrer and dismiss this claim with prejudice.

### 2. No RRA Private Cause of Action

Secretary Wetzel argues that the RRA does not create a private cause of action allowing Graziano to challenge this issue. Our Supreme Court in *Small* clearly held that the RRA does not create a private cause of action. *Small*, 722 A.2d at 670. Accordingly, we sustain the Secretary's preliminary objection in the nature of a demurrer and dismiss Graziano's claim with prejudice.

### 3. Void for Vagueness Claim

Finally, Graziano contends that the SCF sanction procedure "is void for vagueness to the extent that it [does not] interpret or references [sic] its enabling

19

regulation 37 Pa. Code §[ ]93.10 and DC-ADM 801." (Am. Pet., Relief Requested, ¶ A.11.) Secretary Wetzel did not file a preliminary objection in the nature of a demurrer to this claim. Consequently, this claim remains part of the civil action at this procedural juncture.

## F. Demurrer—Mental Health Act

Secretary Wetzel argues that Graziano fails to state a claim based on the Mental Health Act, because Graziano does not have a private cause of action to enforce the Mental Health Act. (Secretary's Preliminary Objection ¶ 20; Secretary's Brief at 9.) Secretary Wetzel directs our attention to *Cohen v. Chester County Department of Mental Health/Intellectual Disabilities Services* (E.D. Pa., No. 15-5285, filed May 25, 2016), slip op. at 27, to support his position that Graziano does not have a private cause of action to enforce the Mental Health Act. In *Cohen*, the United States District Court for the Eastern District of Pennsylvania held that the Mental Health Act does not create "an explicit private right of action for beneficiaries of state-provided services to enforce its provisions against the state or counties." *Id*. at 27. The United States District Court for the Eastern District of Pennsylvania noted that it has "not identified any such authority." *Id*. at 28.

Graziano counters that *Naughton v. Bevilacqua*, 458 F. Supp. 610 (D.R.I. 1978), supports his claim that he has a private right of action under the Mental Health Act. We disagree. First, it is important to recognize that the United States District Court for the District of Rhode Island reviewed the (now-repealed) Developmental Disabilities Assistance and Bill of Rights Act of 1994 (Disabled Assistance Act), 42 U.S.C. §§ 6001-6081,[19] and not the Commonwealth's Mental

---

[19] Act of April 6, 1994, Title I, § 102, 108 Stat. 285, repealed by Act of October 30, 2000, Title IV, § 401(a), 114 Stat. 1737.

Health Act. Second, the United States District Court for the District of Rhode Island reasoned that there was an "implied right" to a cause of action under the Disabled Assistance Act based on its "legislative scheme, purpose and history." Graziano, other than citing to *Naughton*, fails to persuade us that we should read into the Commonwealth's Mental Health Act an "implied right" to a private cause of action when the General Assembly chose not to provide such a remedy in drafting the statute.

Graziano similarly relies on *Halderman v. Pennhurst State School & Hospital*, 612 F.2d 84 (3d Cir. 1979) (*Halderman I*), to support his argument that he has a private right of action under the Commonwealth's Mental Health Act. In *Halderman I*, the United States Court of Appeals for the Third Circuit reviewed a federal district court's consent decree that granted class action injunctive relief to persons confined at a state-run school and hospital for the developmentally disabled. *See Halderman I*, 612 F.2d at 88-89. The Third Circuit affirmed the district court's consent decree and, in relevant part, held that the (now-repealed) Disabled Assistance Act created substantive rights in favor of the mentally disabled who have an implied cause of action to enforce those rights. *Id.* at 97-98.

What Graziano fails to acknowledge is that the United States Supreme Court reversed the Third Circuit's decision, holding that the (now-repealed) Disabled Assistance Act did not create in favor of the mentally disabled any substantive rights to appropriate treatment in the least restrictive environment. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 10-11 (1981) (*Halderman II*). The United States Supreme Court determined that it "need not reach the question [of] whether there is a private cause of action," because the Disabled Assistance Act did not create substantive rights. *Id.* at 28 n.21.

Finally, our own legal review of the Commonwealth's Mental Health Act failed to reveal any support for Graziano's claim. Instead, we agree with the United States District Court for the Eastern District of Pennsylvania's conclusion in *Cohen* that the Commonwealth's Mental Health Act does not create an explicit private right of action for beneficiaries of state-provided services to enforce its provisions against the counties—at least not as alleged by Graziano. Accordingly, we sustain Secretary Wetzel's preliminary objection in the nature of a demurrer and dismiss this claim with prejudice.

## IV. CONCLUSION

For the reasons discussed above, we sustain the Secretary's preliminary objections, in part, overrule them, in part, and grant Graziano's application for leave to file a second amended petition for review.

_____
P. KEVIN BROBSON, Judge

22

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward Graziano,                          :
                          Petitioner      :
                                          :
          v.                              :    No. 468 M.D. 2019
                                          :
John Wetzel, Secretary of the             :
Pennsylvania Department of                :
Corrections,                              :
                          Respondent      :


# **O R D E R**

AND NOW, this 9th day of November, 2021, Secretary Wetzel's preliminary objections to the amended petition for review in the above-captioned matter are SUSTAINED, in part, and OVERRULED, in part, as follows:

(1) Secretary Wetzel's preliminary objection for lack of subject matter jurisdiction is OVERRULED.

(2) Secretary Wetzel's preliminary objection in the nature of a demurrer to Graziano's federal procedural due process claim is SUSTAINED, but without prejudice for Graziano to amend his petition for review.

(3) Secretary Wetzel's preliminary objection in the nature of a demurrer to Graziano's federal substantive due process claim is SUSTAINED, with prejudice.

(4) Secretary Wetzel's preliminary objection for lack of standing is OVERRULED.

(5) Secretary Wetzel's preliminary objections based on sovereign immunity are OVERRULED.

(6) Secretary Wetzel's preliminary objection in the nature of a demurrer to Graziano's claims concerning (a) the Regulatory Review Act, Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-.14; (b) the Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602, and 45 Pa. C.S. §§ 501-907, which, collectively, are known as the "Commonwealth Documents Law"; and (c) the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 to -506, is SUSTAINED, with prejudice.

(7) Secretary Wetzel's preliminary objection in the nature of a demurrer to Graziano's claims based on the Mental Health and Intellectual Disability Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§ 4101-4704, is SUSTAINED, with prejudice.

Graziano's application for leave to file a second amended petition for review is GRANTED, and he may file a second amended petition within 30 days of service of this opinion.

_____
P. KEVIN BROBSON, Judge